## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**PENSACOLA FIREFIGHTERS' RELIEF
PENSION FUND BOARD OF TRUSTEES,**
       **Plaintiff,**

**vs.**                                     **No. 3:09cv53/MCR/MD**

**MERRILL LYNCH PIERCE FENNER
& SMITH, INCORPORATED,**
       **Defendant.**

_____

### ORDER

Now before the court are (1) a motion by defendant asking for partial reconsideration of the court's order of November 18, 2009 with incorporated memorandum in support as supplemented, with plaintiff's response (docs. 69, 74, 80), (2) defendant's supplemental response to plaintiff's motion to compel (doc. 70), (3) defendant's motion for leave to file a reply in support of its motion for reconsideration with plaintiff's response in opposition and motion to strike the reply (docs. 75, 77, 78), and (4) defendant's motion for protective order with plaintiff's opposition (docs. 76, 79).

On November 16, 2009 the court held a three hour hearing on plaintiff's motion to compel.  That hearing resulted in the order defendant now wants reconsidered.  The order also reserved ruling on whether discovery should be allowed on requests for production nos. 13, 14, 15(c) and 15(e).

## Reconsideration

Defendant moves for reconsideration of two portions of the court's November 18, 2009 order. First it asks the court to reconsider its finding that Merrill Lynch has waived the attorney-client privilege with respect to certain discovery requests due to its failure to provide a Fed.R.Civ.P. 26(b)(5) privilege log. Merrill Lynch argues: (1) that it acted on a good faith understanding that parties would define the scope of the production prior to exchanging privilege logs; and (2) its delay in producing a privilege log (which it states it has now done) should not constitute a waiver under the circumstances of this case. Plaintiff claims that it is entitled to the documents.

### Motion for Reconsideration–legal standard

The Eleventh Circuit has described a motion for reconsideration as falling within the ambit of either Rule 59(e) (motion to alter or amend a judgment) or Rule 60(b) (motion for relief from judgment). *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir.1993). In either situation, relief granted from such motion is within "the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion." *Id*. "A district court's denial of reconsideration is especially soundly exercised when the party has failed to articulate any reason for the failure to raise an issue at an earlier stage in the litigation." *Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir.1990).

Reconsideration of a court's previous order is an extraordinary remedy and, thus, is a power which should be used sparingly. *American Ass'n of People with Disabilities v. Hood*, 278 F.Supp.2d 1337, 1339 (M.D.Fla.2003) (citing *Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth*., 814 F.Supp. 1072, 1072-73 (M.D.Fla.1993)); *Beeders v. Gulf Coast Collection Bureau,* 2009 WL 3013502, 1 -2 (M.D.Fla.,2009); *Carson v. J. Curt, Inc*., 2008 WL 4274502, 1 (N.D.Fla.,2008). The courts have delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; (3) the need to correct clear error or prevent manifest injustice. *Sussman v. Salem, Saxon*

*& Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D.Fla.1994); *Beeders; Carson; supra.* "A motion for reconsideration should raise new issues, not merely readdress issues litigated previously." *PaineWebber Income Props. Three Ltd. P'ship v. Mobil Oil Corp.*, 902 F.Supp. 1514, 1521 (M.D.Fla.1995). The motion must set forth facts or law of a strongly convincing nature to demonstrate to the court the reason to reverse its prior decision. *Taylor Woodrow*, 814 F.Supp. at 1073; *PaineWebber*, 902 F.Supp. at 1521. "When issues have been carefully considered and decisions rendered, the only reason which should commend reconsideration of that decision is a change in the factual or legal underpinning upon which the decision was based. *Taylor Woodrow*, 814 F.Supp. at 1072-73.

<u>Analysis</u>

In this case, Merrill Lynch does not rely on an intervening change in controlling law or the availability of new evidence. Thus, it presumably argues that the court's decision should be reconsidered to prevent "manifest injustice." With respect to the first argument, Merrill Lynch states that it acted on a good faith understanding that the parties would define the scope of the production prior to exchanging the privilege log. It also argues that its delay in providing a privilege log should not constitute waiver under the particular circumstances of this case, because this district has adopted a "holistic" analysis to evaluate whether waiver of privilege is appropriate. See *Pitts v. Francis,* 2008 WL 2229524 (N.D. Fla. 2008) (failure to provide privilege log does not result in automatic waiver of the privilege, but rather courts apply "a holistic analysis taking into account several factors to determine whether the privilege has been waived"); *Pensacola Beach Community United Church, Inc. v. National Union Fire*, 2007 WL 737499 (N.D. Fla. 2007) (same).

In response, plaintiff asserts that Merrill Lynch's argument that it believed that the scope of production would be defined prior to it being required to produce a privilege log, which was raised for the first time in its motion for reconsideration, is disingenuous. Plaintiff points out that Merrill Lynch failed to raise the argument in

its response to the plaintiff's request for production, in its answer to the motion to compel or in its oral argument before the court. If this argument was truly a motivation for Merrill Lynch's good faith actions, its failure to raise it previously was a glaring omission, at the least. Generally, courts do not consider arguments belatedly raised, such as for the first time on appeal or in a reply brief, or such arguments are entitled to a less deferential standard of review. See, e.g. *United States v. Lewis,* 492 F.3d 1219, 1222 (11th Cir. 2007); *Farrow v. West,* 320 F.3d 1235, 1249 n.21 (11th Cir. 2003); *United States v. Dicter,* 198 F.3d 1284, 1289 (11th Cir. 1999); *Hutchinson v. CIA*, 393 F.3d 226, 230 (C.A. D.C. 2005). Merrill Lynch argues in its reply (doc. 75 at 3) that plaintiff is mistaken, that it did raise this issue at oral argument. It is true that this issue was mentioned, but even this mention was late. It also states that it had agreed to produce a privilege log for the requests for which scope was no longer an issue.

Plaintiff also contends that Merrill Lynch's position flies in the face of the specific language of Rule 26(b)(5) which requires a party asserting privilege to expressly make the claim and describe the nature of the things not disclosed "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed.R.Civ.P. 26(b)(5)(A)(ii).

There is abundant district court case law, mostly unreported, holding that a party claiming privilege is obliged to produce a privilege log and its failure to do so means the privilege is waived.[1] Although lengthy quotations from other cases is not

---

[1]*See Digecor, Inc. v. E.Digital Corp.*, 2008 WL 803108 *2 (D. Utah 2008) (privilege can only be asserted as an express claim accompanied by a detailed privilege log that can be assessed by the requesting party.); *Wunderlich-Malec Systems, Inc. v. Eisenmann Corp.*, 2006 WL 3370700 *8 (N.D. Ill 2006) (citing *Abbott Labs. v. Alpha Therapeutic Corp* ., 97 C 1292, 2000 WL 1863543, at *3 (N.D.Ill.Dec. 14, 2000)); *Baxter Healthcare Corp. v. Fresenius Medical Care Holding, Inc.*, 2008 WL 5214330 *3 (N.D. Cal. 2008); *Akers v. Keszei*, 2009 WL 3642991 *3 n.2 (D.Nev. 2009); *Koninklijke Philips Electronics, N.V. v. KXD Tech, Inc.*, 2007 WL 778153 *4 (D.Nev. 2007) (citing *Diamond State Insurance Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 698 (D.Nev.1994)); *Nash v. Life Ins. Co. of North America*, 2009 WL 1181605 *5 (N.D. Ill. 2009); *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.,* 230 F.R.D. 688, 695 (M.D. Fla. 2005) (citing *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 664 (S.D.Ind.1991); *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 641-642 (S.D.N.Y.1991)); *Nat'l Union Fire Ins. Co. v. Midland Bancor,*

favored, the court notes that this language from a Middle District of Florida case is instructive:

> The Eleventh Circuit has never determined what constitutes a timely production of a privilege log in response to a request for production of documents. A survey of district court discovery rulings reveals wide divergence on whether the privilege log must be produced at the time that the written response is due pursuant to Rule 34 to preserve the privilege. The only United States Court of Appeals to explicitly construe the relationship between Rule 26(b)(5) and Rule 34 is the Ninth Circuit in *Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court for the Dist. of Montana*, 408 F.3d 1142 (9th Cir.2005).
>
> The Ninth Circuit rejected a per se rule that the failure to produce a privilege log within Rule 34's 30-day time limit results in waiver of the privilege. *Id.* at 1149. Instead, the Ninth Circuit enumerated several factors that should be applied "in the context of a holistic reasonableness analysis," and there should not be a mechanistic determination of whether information is provided in a particular format. *Id.* The Ninth Circuit held that:
>
>> [U]sing the 30-day period as a default guideline, a district court should make a case-by-case determination, taking into account the following factors: the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard.

---

*Inc.*, 159 F.R.D. 562, 567 (D.Kan.1994) (general allegation of privilege insufficient; if privilege is not specified and substantiated it may be lost); *John Labatt Ltd. v. Molson Breweries*, Nos. CIV.A.93-75004, 94-71540, 1995 WL 23603 (S.D.N.Y. Jan. 20, 1995) (failures to produce privilege log at hearing held on motion to compel and to bring contested documents to court for in camera justified granting of motion to compel, despite claim of privilege)..

*Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.,* **230 F.R.D. 688, 695 (M.D. Fla. 2005). The** *Universal City Dev. Partners* **court adopted "the Ninth Circuit's thoughtful analysis of the issue" and the holistic approach. S***ee also Pitts v. Francis,* **2008 WL 2229524 (N.D. Fla. 2008) (failure to provide privilege log does not result in automatic waiver of the privilege, but rather courts apply "a holistic analysis taking into account several factors to determine whether the privilege has been waived");** *Pensacola Beach Community United Church, Inc. v. National Union Fire*, **2007 WL 737499 (N.D. Fla. 2007) (same);** *E.Jaffe Pension Plan v. Household Intern., Inc.,* **244 F.R.D. 412 (N.D. Ill. 2006) (given that four million pages of documents were at issue in the case, a lender's three month delay in providing a privilege log did not waive the attorney-client and work product privileges).**

 **Clearly, the preparation of a privilege log given the volume of files at issue will be burdensome. However, the fact that the compilation of such a log is burdensome will not obviate the obligation of providing one.** *See Wunderlich-Malec Systems, Inc. v. Eisenmann Corp.*, **2006 WL 3370700 \*8 (N.D. Ill 2006).;** *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of* **408 F.3d at 1149 n. 3 (noting that compiling a privilege log in discovery-intensive litigation "may be exceedingly difficult, even for counsel who are sophisticated, experienced, well-funded, and acting in good faith"). Furthermore, Pensacola Firefighters asserts that if Merrill Lynch found the discovery request to be onerous, it could have moved, under Fed.R.Civ.P. 26(c)(1) for a protective order, or even an extension of time, but it failed to do so. See, e.g.,** *Rural Water Systems Ins. Ben. Trust v. Group Ins. Adm'rs, Inc.*, **160 F.R.D. 605, 607-608 (D. Kan 1995). Instead, argues plaintiff, Merrill Lynch hid behind precisely the kind of generalized boilerplate objections which are looked upon with great disfavor by this court, and in doing so essentially unilaterally bifurcated the discovery process.**

 **Finally, the plaintiff notes that Merrill Lynch has failed to provide a privilege log even after having been ordered by the court to do so. Exhibit A to defendant's**

motion for partial reconsideration, which defendant identifies as its privilege log, lists only seven items. A supplement filed eight days after plaintiff's response lists a total of 23 items. (Doc. 80). Merrill Lynch asserts that this log reflects all documents currently withheld on the basis of privilege (doc. 69 at 8), However, it asserts in its reply that it has not yet completed its review of all the documents in this case and therefore "cannot possibly have logged all responsive, privileged documents." (Doc. 75 at 4).

Merrill Lynch also argues that plaintiff has not been prejudiced by the absence of a privilege log, because there has never been a question that the documents sought by plaintiff during the motion to compel are privileged, e.g. request 13. Instead, the question has always been whether Mr. Callaway waived the privilege, by disclosing to the Trustees the findings of Merrill Lynch's attorneys regarding the SEC investigation.

Merrill Lynch asserts that counsel for the plaintiff never raised the absence of a privilege log in its Rule 37 correspondence, but now seeks to use the absence of a log by which it is not prejudiced as a means to obtain privileged documents from a group of documents that counsel for Merrill Lynch has not yet had a chance to review. (Doc. 75 at 5). This argument ignores the fact that plaintiff should not be required to ask for something that the Rules clearly state the defendant must provide.

Merrill Lynch also seems to suggest that plaintiff's own non-responsiveness to discovery should weigh against its attempt to obtain privileged documents (doc. 75 at 5), a position that resonates like a defensive attention-shifting accusation. If defendant believed it had a legitimate complaint about the manner in which plaintiff was responding to discovery, it was incumbent upon defendant to bring that to the court's attention as such, not to raise it in an attempt to justify or defend its own action. Defendant's obligation to comply with discovery is not dependent upon how satisfied it is with plaintiff's compliance. It cannot hide behind plaintiff's alleged

delays in complying with its discovery obligations or rely on those to make its own shortcomings seem less egregious.

After carefully reviewing the pleadings, the court concludes that Merrill Lynch's claim of privilege is too little, too late. Merrill Lynch is effectively asking for leave to start over, but the court finds that the privilege has been waived, and the motion for reconsideration as to that issue will be denied. However, Merrill Lynch will be allowed to redact personal information involving other clients, to the extent that such information is included.

Merrill Lynch also asks that the court reconsider the portion of its order requiring Merrill Lynch to review, gather and produce documents related to ten selected clients that are responsive to Plaintiff's requests Nos. 5, 15(a), 15(b), 15(h), 24 and 28 (doc. 69 at 10). It asserts that although the court has made an effort to narrow the requests into an appropriate and workable format, given the number of documents at issue, the request remains "incredibly burdensome." In order to conduct this review, Merrill Lynch asserts it will have to review millions of pages of documents, only some of which are currently in electronic format, and even after narrowing the field of responsive electronic documents through key word searches it will have to review hundreds of thousands of documents. Defendant further contends that it will have to engage in the time consuming process of sorting through 1,330 boxes of hard copy documents that are not necessarily stored or sorted by client.

Defendant also maintains that the court's order directing that it produce documents relating to ten clients is disproportionate because discovery that it has already produced shows that only 12 of the Callaway Group's more than 100 public pension fund clients used two of the subject money managers[2] and only a single client, the plaintiff, used all three. Thus, Merrill Lynch argues that in light of the difficulty and expense of producing the subject documents and the relatively small

---

[2]Trustco, DZR, and Davis, Hamilton.

number of plans using more than one of the subject managers that the court either (1) reconsider its order requiring the production of additional documents based on the plaintiff's "pattern and practice" argument, or, alternatively (2) allow plaintiff to select only six managers, representing half of the plans that had more than one of the subject managers.

Defendant has apparently misread the court's order, which allowed plaintiff to select ten funds that used *at least* one, not *more than one* of the three money managers. Thus, defendant's argument bears little relation to the court's order. In the alternative, defendant asked for an extension of time to complete its response to the discovery request, which will be a significant undertaking. This motion has already been under advisement for six weeks. Defendant will be afforded an additional four weeks in which to comply.

## The Remaining Requests for Production

### Request 13

Request 13 sought documents, reports, memorandums, and notes generated from the review of Merrill Lynch's Florida based pension consultant team and its Ponte Vedera South Office that Senior Vice President Michael Callaway described in his December 2005 presentation to the plaintiff's trustees. With respect this request, plaintiff argues that Michael Callaway impliedly waived the attorney-client privilege when he spoke generally of the Corporate Audit group's ad hoc review, performed at the direction of Merrill Lynch's in-house counsel. Plaintiff notes that Callaway's presentation was an obvious effort to keep plaintiff's business and provide reassurance that there were no problems in the way it was conducting business. Plaintiff further asserts that because Merrill Lynch deliberately and for its own financial benefit described the results of the reviews, it impliedly or inadvertently waived any attorney client privilege that might have attached to the

documents requested. *See U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Corp.*, 630 F.Supp.2d 1332, 1336 (M.D. Fla. 2007).[3]

Merrill Lynch argues that Callaway's presentation did not constitute a waiver of the attorney-client privilege, first because Callaway is not the client and thus is not the holder of the attorney client privilege. Rather, Callaway was the subject of the ad hoc review, and was only a Merrill Lynch "representative," not "corporate management," as is required to waive the attorney-client privilege of a corporation under Florida law. *Tail of the Pup, Inc. v. Webb*, 528 So.2d 506, 506-507 (Fla. 2nd DCA 1988). *Tail of the Pup* addresses intentional waiver, rather than implied waiver. And, plaintiff counters that in the case at bar, a Senior Vice President of the company deliberately and for the financial benefit of the company revealed attorney client information, and that Merrill Lynch's attempts to use the privilege as a sword and a shield is contrary to controlling law. *Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1417 (11th Cir. 1994); *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (selective disclosure for tactical privileges waives the privilege).

Second, even if Callaway did hold the privilege, Merrill Lynch argues that his statement to the Board was extrajudicial and could not result in waiver of the entire subject matter of the ad hoc review since Callaway was not even privy to any attorney-client privileged documents (doc. 70 at 5). Defendant does acknowledge that Callaway's statements concerning his personal belief of the result of the ad hoc review are not privileged and thus maintains that everything but Callaway's conclusion that the review did not uncover any problems is protected by the attorney-client privilege. Plaintiff asserts that even sharing this conclusion is

---

[3]The court in *U.S. Fidelity* enumerated the following circumstances to be considered in determining whether inadvertent disclosure results in a waiver of the attorney-client privilege:
> (1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice.

*U.S. Fidelity & Guar. Co.,* 630 F.Supp.2d at 1336. (Citation omitted).

inconsistent with maintaining the confidential nature of the attorney-client privilege, and it should be considered waived. *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) ("Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege")

Third, defendant argues waiver should not be applied to this situation for public policy reasons.   The doctrine of implied waiver prevents a privilege holder from disclosing only the privileged information beneficial to its position, while attempting to treat the "harmful" privileged information as still privileged in order to gain advantage in litigation.  Defendant asserts that Callaway was not so motivated during the Board meeting both because he was not privy to other information and second, there was no ongoing litigation.  Although he was not motivated by ongoing litigation, there was a clear financial benefit to the defendant from Callaway's disclosure of information, and he may have been motivated by a desire to prevent litigation.  Thus, defendant's argument is not well-taken and they must produce the requested items.


### Request 14 & 15

Request 14 seeks all documents compiled during and produced to the SEC during its investigation. Plaintiff contends, citing Moore's Federal Rules Pamphlet § 26.6[3] that voluntary disclosure of information to the government in conjunction with an investigation is a complete waiver of any privilege or work product protection applicable to the information, even if the parties agree that the information shall remain confidential. With respect to these two requests, defendant contends that plaintiff is not entitled to discover all materials provided by Merrill Lynch to the SEC.  Defendant asserts that there are other cases where plaintiff's counsel has made the same allegations on behalf of other plans, but has not pointed the court to any rulings, favorable or otherwise, in such cases.

First, defendant asserts that plaintiff has not shown that its request for all documents produced by the SEC is not overbroad because it has not shown that this request is limited to matters relevant to the parties' claims and defenses in this action. Fed.R.Civ.P. 26(b)(1). This issue was addressed at the hearing.

Defendant also asserts that because the SEC and other regulatory bodies are not bound by limitations on the scope of its investigative discovery, production of all the documents provided to the SEC would allow plaintiff to circumvent the limitations placed on discovery by the Federal Rules of Civil Procedure. See *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 744, 104 S.Ct. 2720, 2726, 81 L.Ed.2d 615 (1984) (The SEC is empowered to "require the production of any books, papers, or other documents which the Commission deems relevant or material" (citing 15 U.S.C. § 77s(b)). And, SEC regulations do not make public all information obtained in investigations and examinations. See 17 C.F.R. § 203.2 (information or documents obtained by the Commission in the course of any investigation or examination, unless made a matter of public record, shall be deemed non-public). Investigative proceedings are non-public and even the reports on the investigation are for staff and SEC use only. 17 C.F.R. §§ 203.5; 202.5(a). Therefore, argues defendant, the mere fact that a document has been produced to the SEC does not automatically render it a public record with respect to which any assertion of privilege has been waived.

Despite the fact that defendant's argument holds some logical appeal, and the fact that the Eleventh Circuit has not ruled on the issue, many courts to have considered the issue have concluded that there is no selective waiver of privilege. That is, a party may not waive the attorney-client privilege for its own benefit to a third party government agency, then hide behind the privilege in civil litigation. See e.g., *In re Qwest Communications International, Inc.,* 450 F.3d 1179, 1187 (10th Cir. 2006) (rejecting selective waiver); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1418 (3rd Cir. 1991) (disclosing documents to the SEC and

the DOJ to cooperate with investigation waived attorney-client and work product privilege); *In re Columbia/HCA Healthcare Corporation Billing Practices Litigation,* 293 F.3d 289, 295-302, 305-306 (6th Cir. 2002) (rejecting selective waiver, finding that disclosure to SEC waived privilege); *United States v. Mass. Inst. of Tech.,* 129 F.3d 681, 686 (1st Cir. 1997) (same); *In re Steinhardt Partners, L.P.,* 9 F.3d 230, 235, 236 (2nd Cir. 1993) (work product protection waived with respect to a document defendant had produced to SEC in hopes of preventing a formal investigation); *In re Martin Marietta Corp.,* 856 F.2d 619, 623-624 (4th Cir. 1988) (rejecting limited waiver of attorney-client privilege); *In re John Doe Corp.,* 675 F.2d 482, 489 (2nd Cir. 1982) ("A claim that a need for confidentiality must be respected in order to facilitate the seeking and rendering of informed legal advice is not consistent with selective disclosure when the claimant decides that the confidential materials can be put to other beneficial purposes."); *Permian Corp. v. United States*, 665 F.2d 1214 (D.C. Cir. 1981) (disclosure of privileged information to any third party, including the government, destroys the privilege); accord *In re Supoenas Duces Tecum*, 738 F.2d 1367, 1370 (D.C. Cir. 1984)(client cannot pick and choose among opponents, waiving the privilege for some and resurrecting claim of confidentiality to obstruct others or to invoke privilege as to communications whose confidentiality he has already compromised for his own benefit)(citation omitted); *cf. Teachers Insurance* and Annuity Ass'n of America v. Shamrock Broadcasting Co., Inc., 521 F.Supp. 638, 644-45 (D.C. N.Y. 1981) ("disclosure to the SEC is a complete waiver of attorney-client privilege unless the right to assert the privilege in subsequent proceedings is specifically reserved at the time the disclosure is made")(rejected by *In re Columbia, supra*).

Other courts have reached the opposite conclusion. See *Diversified Industries Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977) (the disclosure of privileged information to the government as a third party waived the attorney-client privilege only with respect to the government); *In re Grand Jury Subpoena Dated July 13,*

*1979*, 478 F.Supp. 368, 373 (D. Wis. 1979) (same); *In re LTV Securities Litigation*, 89 F.R.D. 595, 605 (N.D. Tex. 1981) (same); *Byrnes v. IDS Realty Trust*, 85 F.R.D. 679, 689 (S.D. N.Y. 1980) (same); *Enron Corp. v. Borget,* 1990 WL 144879 at *2 (S.D.N.Y. 1990); *Schnell v. Schnall,* 550 F. Supp. 650 (S.D.N.Y. 1982). See also *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235, 236 (2nd Cir. 1993)(declining to adopt a per se rule that all voluntary disclosures to the government waive the protection of privilege); *Mallinckrodt Chemical Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 352 (S.D. N.Y. 1973) (a demand for document production that satisfies requirements of the Federal Rules must be honored, and the fact that the documents were submitted to the SEC is "wholly irrelevant," but "[t]he production of documents to an agency or other investigative body does not automatically make those documents discoverable in a separate proceeding.")

The SEC stated in an amicus brief filed in the Second Circuit that the protection of privilege is not required to encourage compliance with SEC requests for cooperation with investigation, and that it continued to receive voluntary cooperation from subjects of investigations, notwithstanding the rejection of the selective waiver doctrine by (at that time) two circuits and "public statements from Directors of the Enforcement Division that the SEC considers voluntary disclosures to be discoverable and admissible." *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2nd Cir. 1993).

This court finds that the latter conclusion is more in keeping with the intent of the Federal Rules of Civil Procedure. Thus, although the court finds that the defendant's claim to attorney-client privilege has been waived, the court finds persuasive defendant's position that production of all of the documents produced to the SEC, without a more particularized request, could potentially allow plaintiff to bypass the limitations on the scope of discovery established by the Rules. Thus, the items requested in plaintiff's request number 14, as stated, do not have to be produced.

Requests 15(c) and (e) seek all correspondence sent to, sent from, received by or generated by persons in the Merrill Lynch Ponte Vedra South Office that discuss the SEC investigation (request 15(c)), and inquiries, investigations, or reviews by FINRA, Merrill Lynch Compliance or Supervision, State Regulators, Federal Agencies into Merrill Lynch (request 15(e)).  The items sought in request number 15(c) shall be produced.  The items from request 15(e) appear in substance to be the same as the SEC materials, and are not discoverable.

Accordingly, it is ORDERED:

Defendant's motion for partial reconsideration (doc. 69) is denied.

Defendant's motion for leave to file reply brief in support of motion for reconsideration (doc. 75) is GRANTED, but its request for oral argument is DENIED.

Defendant's motion for protective order (doc. 76) is DENIED.

Plaintiff's request for leave to file a supplemental memorandum (doc. 77 ) is DENIED.

Plaintiff's motion to strike motion for leave to file reply brief (doc. 78) is DENIED.

Plaintiff's motion to compel (doc. 50) is granted in part and denied in part as discussed above, and in the court's previous order (doc. 67).  Defendant shall have twenty-eight (28) days from the date of this order to comply with the plaintiff's discovery requests, as set forth herein.

DONE AND ORDERED this 5th day of February, 2010.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

*Case No: 3:09cv53/MCR/MD*