**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**PENSACOLA FIREFIGHTERS' RELIEF**
**AND PENSION FUND BOARD OF TRUSTEES,**

| | |
|---|---|
| **Plaintiff** | **CASE NUMBER** |
| **v.** | **3:09-cv-53-MCR-MD** |

**MERRILL LYNCH, PIERCE, FENNER,**
**& SMITH, INCORPORATED,**

                              **Defendant.**
_____/

**MERRILL LYNCH'S BRIEF IN SUPPORT OF MOTION TO APPEAL TO U.S.**
**DISTRICT JUDGE  N RE: THE DISCOVERY ORDERS OF THE MAGISTRATE**

        Defendant, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("ML"), pursuant to

Federal Rule of Civil Procedure 72(a), hereby submits this brief in support of its Motion to

Appeal to the U.S. District Judge in re: the Magistrate's November 18, 2009[1] and February 5,

2010 Discovery Orders (Doc. Nos. 67 and 88).

        ML asks this Court to vacate the Magistrate's findings that ML and/or its employee

waived the attorney-client privilege. In the Magistrate's Discovery Order he states "I believe that

the attorney/client privilege is nearly sacred, and I am not inclined to find that such a critically

important privilege has been waived accidentally, by implication or by oversight, except in the

most unusual and compelling circumstances." (Doc. No. 54).  Nonetheless, in a move

unsupported by the factual record or well established case law, the Magistrate, in his November

18, 2009 Order, made the unprecedented holding that ML waived its attorney-client privilege by

_____

[1] The filing of the motion for partial reconsideration tolled the deadline for objecting to the Magistrate's November 18, 2009 Order. *See Tomlinson, et. al v. Allstate Indemnity Co.*, 2007 U.S. Dist. LEXIS 9213, at * 4 (E.D. La. Jan. 31, 2007) ("[D]uring the pendency of a motion for reconsideration before a Magistrate, the time for filing an objection to the District Court is tolled"); *see also EEOC v. Venator Group, Specialty, Inc.*, 2001 U.S. Dist. LEXIS 2506, at *11 (S.D.N.Y. Mar. 12, 2001).

not producing a privilege log along with its discovery responses. The Magistrate then compounded the error by affirming this decision in his February 5, 2010 Order, and finding that a ML employee waived ML's privilege to another large grouping of attorney-client documents.

As is discussed below, ML estimates that it has between 12 and 15 million pages of documents that were potentially responsive to Plaintiff's expansive requests for production. In not producing a privilege log along with its responses, ML acted on its good faith belief (formed through communications with Plaintiff's counsel and supported by case law) that the scope of Plaintiff's requests would be determined *first*, and ML would only *then* provide a log as to documents deemed discoverable and identified as privileged. Moreover, the task of reviewing documents that might not ultimately be included in the universe of what is responsive, would be futile and wasteful. As a matter of fact, the Court ultimately acknowledged ML's objection to the scope of the requests by denying some requests outright and by limiting others. Despite concluding that it was too burdensome for ML to review and produce millions of pages, the Magistrate found that ML should have reviewed those same burdensome documents and produced a privilege log. This ruling was based on nothing "unusual [or] compelling," and it is contrary to the law. Therefore, ML respectfully asks this Court to vacate the existing Orders as to waiver of the attorney-client privilege.

## **FACTUAL AND PROCEDURAL BACKGROUND**

It is critically important that this Court understand the procedural and factual background that led to this objection to the Magistrate's Orders. This case is one of the first in a group of more than 20 similar cases filed by Plaintiff's counsel asserting claims arising out of the consulting services ML provided to certain public pension funds in the State of Florida. In their First Request for Documents, Plaintiff's counsel sought a sweeping array of documents related,

in part, to business conducted in ML's Ponte Vedra, Florida office, activities performed by ML's consulting services business unit in New Jersey, documents produced by ML to the SEC and other regulatory bodies relating to its nationwide review of ML's consulting services business, documents related to the Plaintiff's relationship with ML, and documents related to unrelated clients of ML. (*See* Declaration of Peter S. Fruin, at ¶ 5, attached as Exhibit A to ML's Motion for Reconsideration) (Doc. No. 69). All told, Plaintiff was seeking production of, conservatively, more than 10 million pages of documents. ML timely responded to this request on July 8, 2009.

Since Plaintiff's requests for documents were overly broad and unduly burdensome, ML set forth its responses and objections and then—as has been his practice in numerous cases against Plaintiff's counsel over the last 8-10 years—Counsel for ML endeavored to negotiate a reasonable set of discovery requests with Plaintiff's counsel (in particular Mr. Mougey). Due to the tremendous number of documents potentially at issue in these requests,[2] counsel for both parties recognized the importance of attempting to agree upon the scope of the requests. Indeed, despite reaching an agreement with Plaintiff's counsel to limit the scope of some of the requests, ML has produced over 310,000 pages of documents. Although the parties were able to resolve some of their disagreements, they were not able to resolve all of them.

On October 9, 2009, Plaintiff's counsel filed a Motion to Compel (Doc. No. 50). ML filed its Response in Opposition on October 19, 2009 (Doc. No. 56). The parties again engaged in negotiation and resolved several additional discovery disputes. At all times Plaintiff's counsel was aware that counsel for ML had not reviewed the entire universe of documents potentially responsive to Plaintiff's requests. Indeed, Plaintiff's counsel expressed that they wanted to obtain

---

[2] As discussed in further detail below, ML estimates that it has between 12 and 15 million pages of documents that are related to its consulting services line of business and that are potentially responsive to Plaintiff's requests. Although some of the documents might be duplicative, there is no way to know this for sure without reviewing them.

rulings on the scope of discovery, understanding that all potentially responsive documents had not been reviewed. A hearing was held on November 16, 2009, and the Magistrate issued his Order on November 18, 2009.

In his November 18, 2009 Order, the Magistrate made rulings or reserved rulings relating to eleven specific requests.[3]  Specifically, the Judge ruled:

1.    Plaintiff's Motion to Compel with respect to request nos. 5, 15(a), 15(b), 15(h), 24 and 28 is granted in part . . .

2.    Plaintiff's Motion to Compel with respect to request no. 11 is denied.

3.    The issues raised in request nos. 13, 14, 15 (c), and 15(e) are taken under consideration . . .

*See* Order, Doc. No. 67, page 4. In reaching this decision, the Magistrate also found in his Order: (a) that Defendant's objections to the request were not well taken; and (b) that the attorney-client privilege was waived due to Defendant's failure to timely provide a privilege log. *Id.* at 3.[4]

In determining that ML's objections were not well taken, the Magistrate concluded that ML's objections were "boilerplate." (*Id.* at 2) Despite characterizing the objections as boilerplate, the Magistrate in effect acknowledged the validity of the objections by refusing to permit certain discovery requests and significantly limiting discovery as to the six requests to which he permitted discovery. (*Id.* at 3) Indeed, rather than order the production of documents related to the approximately 120 non-party clients requested by Plaintiff, the Magistrate limited the request to only 10 non-party clients—roughly 8% of the documents requested in the subject

---

[3]  In a meet and confer prior to this filing, Plaintiff's counsel acknowledged that the Order only applies to eleven requests.

[4]  Since the Judge only ordered ML to make a limited production as to six requests, Requests 5, 15(a), 15(b), 15(h), 24 and 28, as amended by the Order, ML asserts that the waiver ruling only applies to those six requests. Plaintiff argues that the scope of the waiver ruling applies to these six requests in their entirety, as well as to the four requests the Magistrate specifically reserved ruling on, namely, 13, 14, 15(c) and 15(e). The parties agree that the Order does not apply to the one request denied by the Magistrate (No. 11) or to the other requests and sub-parts that the parties resolved prior to the hearing.

requests. (*Id*. at 4) With regard to the Magistrate's decision as to waiver of attorney-client and work product privilege, the Magistrate rejected ML's position that *first* the Court must ascertain the proper scope of the requests and *then* require ML to produce a privilege log.[5]

On November 25, 2009, ML filed a Motion for Partial Reconsideration (Doc. No. 69) asking the Magistrate to reconsider his finding that, because ML did not produce a privilege log along with its timely discovery responses, ML had waived the privilege as to those documents that it had disputed were discoverable prior to the November 18th Order. ML's Motion for Partial Reconsideration further noted that the effect of the waiver ruling potentially included privileged documents it had yet to locate,[6] including any privileged documents it later identified in connection with its review of approximately 13 to 15 million potentially responsive pages of documents. ML also requested reconsideration of that portion of the Magistrate's Order requiring production of thousands of documents relating to non-parties by December 31, 2009. On December 3, 2009, ML filed a Motion for Protective Order (Doc. No. 76) wherein it sought an extension of time to provide a Rule 26(b)(5) privilege log with respect to those documents that it had yet to locate and/or review.

On February 5, 2009, the Magistrate entered an Order (Doc. No. 88) addressing ML's Motion for Partial Reconsideration. Although the Magistrate granted ML an extension of time to produce documents related to non-parties from December 31, 2009 to March 5, 2010—a recognition of the significant burden of reviewing even the limited group of these documents— he upheld his prior determination that ML had waived the attorney-client privilege because it had

---

[5]  As discussed below, the Magistrate erroneously held that ML somehow was obligated to review and create a privilege log for millions of pages of documents that the Court acknowledged were too burdensome to gather and produce.

[6]  ML attached a copy of its Rule 26(b)(5) privilege log as Exhibit A to its Motion for Partial Reconsideration identifying those documents that it had reviewed and withheld upon a claim of privilege to date.

not provided Plaintiff's counsel with a privilege log along with its responses to Plaintiff's discovery requests. (*Id*. at 9) In so doing, the Magistrate acknowledged  that ML had argued that scope must be decided first at the initial hearing on this matter, but, nonetheless, held that the argument was not timely made. (*Id*. at 4) With respect to the issues previously taken under advisement (discussed above), the Magistrate held that Plaintiff's discovery requests seeking the bulk of the documents collected during the SEC investigation were too broad and also denied Plaintiff's request for a set of communications concerning internal investigations by regulatory bodies other than the SEC.[7] (*Id*. at 15). The Magistrate did, however, require ML to produce a specific sub-set of communications regarding the SEC investigation. (*Id*.) The Magistrate further held that to the extent ML produced privileged documents to the SEC, ML waived any privilege that such documents may have previously held.[8] The Magistrate also held that ML Ponte Vedra office employee Michael Callaway waived ML's corporate privilege with regard to documents related to a 2004 internal investigation of Mr. Callaway. (*Id*. at 11) ML's Objection to the November 18, 2009 and February 5, 2010 Orders is limited to the Magistrate's findings that ML and Callaway waived the attorney-client privilege.

## STANDARD OF REVIEW

The Magistrate's ruling on a non-dispositive matter should be affirmed unless "it has been shown that the Magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *accord* Fed.R.Civ.P. 72(a). A finding is clearly erroneous if "the reviewing court,

---

[7] The Order is unclear as to whether or not Plaintiff can request the SEC materials with a more particularized request. On the one hand, the Order states that "the items requested in plaintiff's request number 14, as stated, do not have to be produced," yet, on the other hand, states that "the items from request 15(e) appear in substance to be the same as the SEC materials [those sought in request 14], and are <u>not discoverable</u>." (Feb. 5 Order at 14 and 15) (emphasis added).

[8] ML believes that the Magistrate's Order would apply only to privileged documents actually provided to the SEC. Plaintiff, however, takes the extreme position that the waiver applies to both privileged documents produced to the SEC and any privileged documents not produced but that may relate to the SEC investigation.

after assessing the evidence in its entirety, is left with a definite and firm conviction that a mistake has been committed."  *Krys v. Lufthansa German Airlines,* 119 F.3d 1515, 1523 (11th Cir. 1997). Thus, it is not required that the reviewing court find that the lower court had no basis for its decision. To the contrary, there can be evidence to support the lower court's decision as long as, despite that evidence, the reviewing court finds with definite and firm conviction that a mistake has been committed. With respect to the "contrary to law" variant of the test, as the Middle and Southern Districts of Florida have recently stated, "a finding is considered contrary to law if it does not apply or misapplies the relevant statutes, case law or rules of procedure." *800 Adept, Inc. v. Murex Sec., LTD*, 2007 U.S. Dist. LEXIS 70861 at **5-6 (M.D. Fla. Sept. 25, 2007) *see also Tolz v. Geico Gen. Ins. Co.*, 2010 U.S. Dist. LEXIS 6709, at *8 (S.D. Fla. January 27, 2010) (same).

## STATEMENT OF THE ISSUES

A.    Whether the Magistrate erred in applying the wrong legal standard in reviewing his November 18, 2009 Discovery Order.

B.    Whether the Magistrate erred in refusing to consider ML's argument that it acted on a good faith understanding that the parties would define the scope of production prior to exchanging privilege logs.

C.    Whether the Magistrate erred by finding waiver based on the delay in providing a privilege log where the absence of such a log was not even raised by Plaintiff's counsel pursuant to Fed. R. Civ. P. 37(a) before moving to compel.

D.    Whether the Magistrate erred in failing to apply a "holistic reasonableness" analysis in evaluating whether ML has waived the attorney-client privilege for failure to produce a privilege log.

E.      Whether the Magistrate erred in imposing the extraordinary sanction of waiver without a finding of bad faith on the part of ML or prejudice to Plaintiff.

F.      Whether the Magistrate erred in denying ML's Motion for Protective Order and finding that the privilege had been waived as to documents that ML had yet to even locate or review.

G.      Whether the Magistrate erred in concluding that Michael Callaway had the ability to and did inadvertently or impliedly waive ML's attorney-client privilege as to ML's internal review of its Ponte Vedra South office.

## ARGUMENT

### A.      The Magistrate Erred By Applying a Rule 59(e) Standard Rather than the De Novo Standard When Reviewing His Interlocutory Discovery Order.

On November 25, 2009, ML filed a motion requesting reconsideration of the Magistrate's November 18, 2009 interlocutory discovery order finding waiver of the attorney-client privilege. The Magistrate characterized ML's motion as a request for "extraordinary" relief pursuant to Fed. R. Civ. P. 59(e) (a motion to alter or amend a judgment) or Fed. R. Civ. P. 60(b) (a motion for relief from judgment), and thus held that reconsideration would be granted only if ML could show (1) an intervening change in law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. (*See* February 5, 2010 Order, p. 2). The Eleventh Circuit authority cited by the Magistrate to support application of a Rule 59(e) standard involved motions for reconsideration made after <u>entry of final judgment</u>. *See Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993); *Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990). However, the subject of ML's Motion for Reconsideration was not a "judgment" for purposes of Rule 59(e). Instead, ML was asking for reconsideration of an <u>interlocutory order</u> granting, in part, Plaintiff's motion to compel discovery. It is well-settled

law that a district court has <u>broad discretion</u> to reconsider an interlocutory order. *See Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000); *see also United States v. Acosta*, 699 F.2d 292, 293 (5th Cir. Unit B 1982) ("[T]he district court has broad power to reconsider the correctness of its interlocutory rulings").[9]   Indeed, the district court may reconsider an interlocutory ruling "for any reason it deems sufficient." *Canaday v. Household Retail Servs., Inc.*, 119 F. Supp. 2d 1258, 1260 (M.D. Ala. 2000), aff'd sub nom. *Perry v. Household Retail*, 268 F.3d 1067 (11th Cir. 2001).

The Magistrate applied an erroneous standard in reviewing his November 18, 2009 Order and, as a result, imposed a burden on ML that is contrary to the law of this Circuit. For this reason alone, the Magistrate's February 5, 2010 Order should be set aside.

**B.      The Magistrate Erred by Refusing to Consider ML's Argument that it Acted on a Good Faith Understanding that the Parties Would Define the Scope of the Production Prior to Exchanging Privilege Logs.**

As recognized in the February 5, 2010 Order, during oral argument on Plaintiff's Motion to Compel, counsel for ML explained that, in not producing the privilege log, he acted on his good faith understanding that the parties would define the scope of the production prior to reviewing and logging documents. (*See* February 5, 2010 Order, p. 4) Absent this understanding, ML would have had to review millions of pages of documents for privilege despite its objections as to burden and scope—an exercise that would deprive ML of its right to have its objections considered and ruled upon by the Court. As evidence of the parties' agreement or understanding, ML pointed out that neither party (plaintiff or defendant) had produced a privilege log with its

---

[9] Decisions of Unit B of the former Fifth Circuit are binding precedent in this Circuit. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

responses to document requests.[10]   Indeed, to date Plaintiff's counsel has still not produced a corresponding privilege log.

As further explained in ML's motion for reconsideration (at pp. 4-5), ML's understanding of the parties' planned course of action is entirely consistent with federal case law. Courts have recognized that, "if a broad discovery request includes an allegedly privileged document, and there is an objection to the scope of the request, the court should first decide whether the objection covers the document." *United States v. Philip Morris Inc*., 347 F.3d 951, 953 (D.C. Circuit 2003) ("*Philip Morris*"). "If the court finds that the document is within the scope of the objection, and the court overrules the objection, it must then give the party an opportunity to list the document on its privilege log pursuant to Rule 26(b)(5)."  *Id*.; *see also Grand River Enters. Six Nations, Ltd. v. Troy King*, 2009 U.S. Dist. Lexis 2045 (S.D.N.Y. January 9, 2009) ("*King*") (declining to find waiver of attorney-client privilege because defendants "did not have to complete their privilege logs while [an objection that the requests were overbroad] was pending."); *Wagener v. Champoux*, 2007 U.S. Dist. LEXIS 21190 (D.D.C. March 26, 2007) (same).

Indeed, the right of a party objecting to the scope of discovery to have its scope objections heard and decided before preparing a privilege log is implicit in Federal Rule of Civil Procedure 26(b)(5), on which the Magistrate relied, which only requires documents to be listed on a privilege log if they are "otherwise discoverable."  Of course, such a determination can only be made once the objecting party's scope objections have been ruled upon. Any contrary

---

[10] The Magistrate's Order construed ML's effort to place its actions in the proper context as a "defensive attention-shifting accusation." (*See* February 5, 2010 Order, p. 7) Such was not and is not ML's intention. Rather, ML mentioned Plaintiff's own actions in its submission only in an effort to demonstrate the parties' *course of dealing and mutual understandings* – issues which are plainly relevant to the Court's evaluation of whether any waiver can be found or imposed as a sanction. *See, e.g., AVX Corp. v. Cabot Corp.*, 251 F.R.D. 70, 79 (D. Mass. 2008) (holding, in a discovery context, that the history of litigation is a factor in assessing the appropriate penalty for belated disclosure of documents).

approach -- one in which to preserve ML's privilege it would have been required to review and log privileged documents before its scope objections had been ruled upon -- would deprive ML of the right, expressly afforded in Fed. R. Civ. P. 34(b)(2)(B) and (C), to make scope objections in the first place.[11]

By way of example, Plaintiff requested that ML produce documents in six requests that related to each of its approximately 120 pension clients in Florida. The Magistrate concluded that such a production, which would entail reviewing millions of pages documents, was too burdensome. Under the Magistrate's Order, however, ML would have had to review millions of pages of documents – the same ones the Magistrate concluded were too burdensome to review and produce – before his ruling on ML's objections in order to determine which to list on its privilege log, before the Magistrate had issued his ruling on ML's objections to the breadth of Plaintiff's discovery requests. ML submits that for the Court to determine that such documents were too burdensome to review and produce, but not too burdensome to review and place on a privilege log, is clearly erroneous and contrary to law. The only logical approach, consistent both with applicable law and the parties' mutual understanding, was for the scope of production to be defined prior to logging privileged documents.

The Magistrate refused to consider this argument because it was not specifically raised in ML's opposition to Plaintiff's motion to compel. (*See* February 5, 2010 Order, p. 4) Specifically, the Magistrate explained that "[g]enerally, courts do not consider arguments belatedly raised, such as for the first time on appeal or in a reply brief, or such arguments are entitled to a less deferential standard of review." (*Id.*) However, the cases cited and relied upon by the Magistrate

---

[11] The course of conduct that the parties had engaged in as well as ML's pending objections also explains why ML did not believe a motion for protective order was necessary. Moreover, a protective order was not reasonable here where ML did not yet have an understanding of the scope of potentially discoverable documents from which to create a privilege log. However, upon receipt of the Magistrate's Order defining the scope of the discovery requests, ML moved for a protective order, which the Magistrate summarily denied without opinion.

11

in support of his finding of "waiver" discuss a party's failure to raise an issue <u>prior to filing an</u> <u>appeal</u>. *See id citing United States v. Lewis*, 492 F.3d 1219, 1222 (11th Cir. 2007) (a failure to assert right against double jeopardy in the district court resulted in waiver of said right); *Farrow v. West*, 320 F.3d 1235, 1249 n.21 (11th Cir. 2003) (on appeal, court refused to address argument raised for the first time in a reply brief); *United States v. Dicter*, 198 F.3d 1284, 1289 (11th Cir. 1999) (same); *Hutchinson v. CIA*, 393 F.3d 226, 230 (C.A. D.C. 2005) (same).

The fact is, raising an issue for the first time after filing an appeal from a lower court is clearly distinct from raising an issue "for the first time" during the initial oral argument held on a given subject before the District Court. Indeed, Florida District Courts have recognized that an issue raised for the first time during oral argument is indeed timely. *See, e.g., Miccosukee Tribe of Indians of Florida v. United States*, 2000 U.S. Dist. LEXIS 22929, at *6 (S.D. Fla. 2000) (court heard claim at oral argument that was not previously raised in any briefs); *Lockheed Martin Corp. v. The Boeing Co.*, 314 F. Supp. 2d 1198, 1217 (M.D. Fla. 2004) (same). Therefore, ML's argument – that it reasonably believed the scope of production would be defined prior to it being required to produce a privilege log – was not belatedly raised and the Magistrate's refusal to consider that argument was clearly erroneous.

ML's argument regarding the scope of production was key to understanding why a privilege log was not provided along with ML's discovery responses. Thus, by rejecting as untimely ML's arguments regarding the scope of production, the Magistrate failed to consider a fundamental factor why ML did not produce a privilege log along with its discovery responses.

### C.   The Magistrate Erred in Finding Waiver Based on ML's Delay in Providing a Privilege Log When Plaintiff Did Not Raise the Absence of a Privilege Log Pursuant to Fed. R. Civ. P. 37(a) Prior to Filing Its Motion to Compel.

As recognized by the Magistrate in his February 5, 2010 Order, ML argued that "counsel for the plaintiff never raised the absence of a privilege log in its Rule 37 correspondence, but

now seeks to use the absence of a log by which it was not prejudiced as a means to obtain privileged documents from a group of documents that counsel for ML has not yet had a chance to review." (February 5, 2010 Order, p. 7). The Magistrate summarily rejected this argument because it "ignores the fact that plaintiff should not be required to ask for something that the Rules clearly state the defendant must provide." (*Id.*). This conclusion is clearly erroneous and contrary to law.

Rule 37(a)(1) expressly requires that, prior to filing a motion to compel, the moving party must certify that he or she "has in good faith conferred or attempted to confer with the person or party filing to make disclosure or discovery …." Fed. R. Civ. P. 37(a)(1). Although Plaintiff's counsel wrote to counsel for ML regarding certain discovery responses/objections (some of which were ultimately resolved), Plaintiff's counsel never raised (in writing or otherwise) ML's delay in providing a privilege log prior to filing its motion to compel.[12]  As stated above, the Magistrate excused Plaintiff's failure to give ML notice and an opportunity to cure (or at least address) the deficiency because another rule of procedure, Rule 26, required the logging of documents. This interpretation, however, renders Rule 37(a)(1) entirely meaningless. Indeed, under the reasoning advanced by the Magistrate, a moving party is not required to "meet and confer" with opposing counsel regarding the failure to produce documents, respond to interrogatory requests, produce initial disclosures, or even make expert disclosures because the "rules clearly state that the defendant must provide" this information within a specified time-frame. Accordingly, the Magistrate's decision to impose the harsh sanction of waiver for failing to provide a privilege log, even though Plaintiff did not even raise the absence of a privilege log prior to filing its motion to compel, was clear error.

---

[12] Plaintiff's failure to raise the issue of a privilege log in its pre-motion correspondence is further evidence that the parties in fact had an understanding that privilege logs would not be exchanged until after scope objections were decided.

**D.      The Magistrate Failed to Apply a "Holistic Reasonableness Analysis" in Evaluating Waiver.**

The failure to provide a privilege log does not result in a *per se* waiver; instead, courts apply a "holistic reasonableness analysis" which takes into consideration the following factors:

1.      The degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged;

2.      The timeliness of the objection and accompanying information about the withheld documents;

3.      The magnitude of the document production; and

4.      Other particular circumstances of the litigation that make responding to the discovery unusually easy or unusually hard.

*See Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g*, 230 F.R.D. 688, 695 (M.D. Fla. 2005) ("*Universal City*"), citing *Burlington N. & Santa Fe Railyard Co. v. United States*, 408 F.3d 1142, 1147 and n.3 (9th Cir. 2005); s*ee also Pensacola Beach Cmty. United Church, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2007 U.S. Dist. LEXIS 16002 (N.D. Fla. March 7, 2007) ("*Pensacola Beach*"); *Pitts v. Francis*, 2008 U.S. Dist. LEXIS 41894 (N.D. Fla. May 28, 2008) ("*Pitts*").

In *Universal City*, the Middle District of Florida applied a holistic reasonableness analysis in determining that the defendant had waived the attorney-client privilege where the defendant's objections did not enable the plaintiff to evaluate the privilege, its privilege log was produced eight months after written responses were due, the universe of the document production was limited to 13,000 documents, the privilege log ultimately produced was insufficient, and defendant had inadvertently produced privileged documents. *Universal City*, 230 F.R.D. at 695-696. Similarly, in *Pensacola Beach*, the Northern District of Florida applied a holistic reasonableness analysis in concluding that plaintiff did not waive the attorney-client

privilege by failing to provide a privilege log along with its objections to defendant's discovery requests. Instead, the District Court directed plaintiff to either (1) produce the discoverable documents demanded or (2) produce a privilege log that complies with Rule 26(b)(5). *Pensacola Beach*, 2007 U.S. Dist. LEXIS 16002 at * 9-11. More recently, in *Pitts*, the Northern District of Florida applied a holistic reasonableness analysis in finding that defendant waived the privilege as to certain documents by failing to produce a privilege log. In reaching this conclusion, the District Court noted that defendant's discovery responses were untimely (and submitted in "draft" form)—and thus the objections had been waived—defendant's objections did not enable the plaintiff to evaluate the privilege, and defendant did not argue or demonstrate that the production would be voluminous. *Pitts*, 2008 U.S. Dist. LEXIS 41894 at * 16-17.

The Magistrate's November 18, 2009 Order, which was the subject of ML's Motion for Reconsideration, did not apply or consider <u>any</u> of the four holistic reasonableness factors outlined above. Instead, the Magistrate apparently concluded that ML had waived the privilege for <u>one reason</u>, namely, the failure to produce a privilege log along with its discovery responses. (*See* November 18, 2009 Order, p. 3 and n. 1)[13] When asked to reconsider his decision in light of *Universal City*, *Pensacola Beach* and *Pitts*, the Magistrate improperly required ML to show "manifest injustice" pursuant to Rule 59(e), rather than evaluating the correctness of his decision *de novo*. Furthermore, while acknowledging that a holistic analysis should be employed when evaluating a claim of waiver, the Magistrate failed to consider <u>any</u> of the factors that would

---

[13] The Magistrate's Order, however, is inconsistent with Florida law. The Magistrate cites a number of cases that find waiver of privilege for a host of different reasons, none of which rely solely on a party's failure to timely produce a privilege log. Among these reasons, the cases cited by the Magistrate found waiver of privilege because the privilege log was not sufficiently detailed, because a party did not respond to requests for production, and because a party did not respond to discovery at all. *See Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 693-694 (M.D. Fla. 2005) ("The privilege log that was produced, however, does not sufficiently describe the documents withheld to enable the Court to assess the privilege claim."); *Akers v. Keszei*, 2009 WL 3642991, at *4 (D. Nev. 2009) (court found party had waived any claims of privilege because the party failed to respond to requests for production); *Koninklijke Philips Elecs., N.V. v. KXD Tech, Inc.*, 2007 WL 778153, at *3 (D. New. 2007) (defendants did not produce any documents during discovery).

militate against imposition of the harsh sanction of waiver. The failure to consider those mitigating factors, which are outlined below, was clearly erroneous and warrants reversal of the Magistrate's decision.

      1.    <u>The degree to which the objection or assertion of privilege enables evaluation of the privilege</u>

With respect to the first factor, one of the requests for production at issue (Request No. 13)[14] <u>specifically seeks</u> privileged reports, memoranda, and notes generated by ML attorneys and its former outside counsel. Indeed, the disagreement between the parties was not whether the documents were privileged, but rather whether Mr. Callaway had the ability to and, in fact, waived the privilege that attached to the documents. Accordingly, the Magistrate was simply incorrect to conclude that ML relied exclusively upon boilerplate objections which precluded Plaintiff from understanding or evaluating the privilege. As to other requests, ML did not object to creating a privilege log; rather, it only sought to determine the scope of any possible production prior to creating the log.

      2.    <u>The timeliness of the objection and accompanying information about the withheld documents</u>

It is undisputed that ML's discovery responses were timely served. It is also undisputed that ML produced a privilege log on November 25, 2009, along with its Motion to Reconsider. The Magistrate held that ML's privilege log, which was supplied approximately 135 days after its responses/objections were served, was "too little, too late."  (February 5, 2010 Order, p. 8) However, the Magistrate's Order fails to explain why a 135-day delay in providing a privilege log in a complex litigation matter entailing a voluminous document production warrants the sanction of waiver, or how plaintiff was prejudiced by the 135-day lag between the service of

---

[14]   ML does not believe the November 18, 2009 Order applies to this request as the Court specifically reserved ruling. Plaintiff maintains that the Order does apply despite the reservation of ruling.

ML's responses/objections and the service of its privilege log. Moreover, although the February 5, 2010 Order cites *E. Jaffe Pension Plan v. Household Intern., Inc.*, 244 F.R.D. 412 (N.D. Ill. 2006) for the proposition that the court should consider the timeliness of production, the Magistrate apparently gave little weight to the fact that the district court in *E. Jaffe Pension Plan* held that the defendant's three month delay in providing a privilege log in a case involving four million pages of documents <u>did not</u> waive the attorney client privilege.

### 3.  The magnitude of the document production

As explained during the November 16, 2009 hearing and in ML's Motion for Reconsideration, the document collection and review in this case has been extraordinary. ML has been able to locate, from numerous sources in various disparate locations, approximately 8.7 million pages of documents in electronic format, 1330 boxes of hard copy documents,[15] and an additional 500,000 documents (representing likely millions of pages) that were at one point stored on ML's email server. (*See* Declaration of Peter S. Fruin, at ¶ 6, attached as Exhibit A to ML's Motion for Reconsideration) Thus, ML estimates that it has between <u>12 and 15 million pages</u> of potentially responsive documents related to its consulting services line of business.[16] (*Id.* at ¶ 7) Although many of these documents are available in electronic format, Plaintiff's broad discovery requests—which often seek general information or information related to uninvolved parties—do not readily lend themselves to "key word" searches. In any event, although the majority of the documents are in electronic format, there remain millions of pages of hard copy documents that cannot be electronically searched at this time.

---

[15] A banker's box holds approximately 3,500 pages.

[16] ML suspects that many of these documents might be duplicative. Nonetheless, the burden of the review remains the same.

In an effort to accomplish the task of reviewing this huge universe of potentially responsive documents, ML has committed multiple lawyers and paralegals from the undersigned's law firm as well as numerous lawyers and paralegals at two other firms. (*Id.* at ¶ 6) In short, ML has undertaken extraordinary efforts at tremendous expense in order to comply with the broad scope of production sought by Plaintiff's counsel. The Magistrate, however, afforded little, if any, weight to the magnitude of the documents potentially responsive to Plaintiff's requests. ML has never suggested that it was not obligated to produce a privilege log – it merely sought to narrow the scope of the production (as recognized in the case law and agreed upon by the parties) before logging responsive privileged documents.

  4. <u>The particular circumstances of the litigation that make responding to the discovery unusually hard</u>

In addition to the sheer volume of the document production, ML's task was exacerbated by the 2008 closure of ML's Ponte Vedra, Florida office, which serviced the relationship with Plaintiff as well as numerous other Florida-based pension plans. (*Id.* at ¶ 8) Moreover, since the time of the closure of the Ponte Vedra office, nearly every ML employee that worked in the office—and therefore who provided consulting services to Plaintiff—has left ML. (*Id.* at ¶ 9) As a result, the collection of documents related to ML's Ponte Vedra office and its Florida-based pension plan clients has been even more time consuming and labor intensive than the "standard" multi-million page document collection. Moreover, in addition to the time-consuming process of culling several hundred thousand responsive documents from a much larger set of consulting services documents, ML has had to go to the additional effort of redacting many of the documents in order to remove confidential information of other parties.[17]  (*Id.* at ¶ 10). Although

---

[17] *See* <u>Gramm Leach Bliley Act</u>. 15 U.S.C. §6801(a): "It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information."

these mitigating factors were brought to the Magistrate's attention, they were not addressed or considered in his February 5, 2010 Order.

> **E.    The Magistrate Erred in Imposing the Extraordinary Sanction of Waiver Because ML Did Not Act in Bad Faith and Plaintiff Has Not Been Prejudiced.**

Because waiver of the attorney-client privilege is such a harsh sanction, courts typically reserve such a penalty for those cases where the offending party engaged in <u>unjustifiable delay or bad faith</u>. *White v. Graceland College Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1267-68 (D. Kan. 2008); *see also United States v. British Tobacco*, 387 F.3d 884, 885 (D.C. Cir. 2004) ("'waiver of privilege is a serious sanction that a court should impose only if a party behaves unreasonably or worse.") (quoting *United States v. Philip Morris, Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003)); *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 2009 U.S. Dist. LEXIS 14271 (M.D. Fla. Feb. 10, 2009) (declining to find waiver of attorney-client privilege due to eight month delay in providing privilege log, court notes that such a result would be "an extreme sanction" under the circumstances); 8 Charles A. Wright, Federal Practice and Procedure § 2106.1, at 230-231 (2d. ed. 1994) (if a party is not guilty of unjustified delay "more measured responses are appropriate").

The Magistrate did not conclude (in either of his Discovery Orders) that ML acted in bad faith or engaged in unreasonable conduct; instead, he found that ML's production of a privilege log was simply too late. However, contrary to the overwhelming weight of case law authority, the Magistrate did not consider a "more measured" response. The sanction of waiver is particularly harsh where, as here, the Plaintiff did not raise the issue of a privilege log in any of its discovery correspondence, did not raise the issue of a privilege log prior to its motion to compel, did not produce its own privilege log, and has not argued (much less demonstrated) that

it suffered prejudice as result of the delay in receiving ML's privilege log.[18]  Indeed, the parties are still in the <u>early stages of written discovery</u> and <u>no depositions have been taken</u>. Accordingly, the Magistrate's imposition of the harsh sanction of waiver without considering a more measured response was clearly erroneous and contrary to law.

**F.    The Magistrate Erred in Denying ML's Motion for a Protective Order and Finding that the Privilege Had Been Waived as to Documents that ML Has Not Yet Located or Reviewed.**

On November 25, 2009, ML filed a Motion for Protective Order (Doc. No. 76) seeking an extension of the timeframe to provide a Rule 26(b)(5) privilege log with respect to the millions of pages of documents that it had not yet located and/or reviewed. Specifically, ML requested that, in light of the fact that counsel had not yet been able to review the 12 – 15 million pages of potentially responsive documents (despite engaging the assistance of two other law firms), it be permitted to supplement its privilege log within a period of time not to exceed 10 days from the discovery of any additional privileged documents. The Magistrate denied ML's Motion for Protective Order on the grounds that it was filed too late.

As stated above, ML did not file a motion for protective order along with its discovery responses because the parties agreed that the scope of production would be addressed prior to ML's collection and review of documents. Indeed, Plaintiff's counsel was fully aware that, at the time the discovery responses were served, ML's counsel had not yet received or reviewed millions of pages of documents potentially responsive to Plaintiff's discovery requests. Nevertheless, Plaintiff's counsel expressed that they wanted to proceed with obtaining rulings on the scope of discovery in order to establish the boundaries of ML's production. This, in turn, would work to reduce the universe of documents otherwise subject to a privilege review.

---

[18] Plaintiff's failure to raise this issue prior to moving to compel indicates that they shared Defendant's counsel's understanding that scope needed to be decided first.

Plaintiff never questioned or disputed this understanding pursuant to Rule 37(a)(1), and raised the issue for the first time in its motion to compel.

As set forth above, ML respectfully submits that the Magistrate's finding of waiver, without engaging in the four factor holistic reasonableness analysis, was clearly erroneous. This is particularly true with respect to a document universe that, due to sheer volume, could not be reviewed by ML's counsel (even with assistance of two firms) and placed on a privilege log at the same time the discovery responses were served or by the time the Magistrate's discovery orders were entered. Although ML believes that it has not waived the privilege at to any documents (including those identified on its privilege log), the Magistrate's determination that the waiver should extend to documents that have yet to be located is both punitive and unreasonable, especially given the absence of a finding of bad faith or unreasonable delay on the part of ML. Indeed, the undersigned counsel has yet to locate a single case finding prospective waiver of the attorney-client privilege with respect to privileged documents that may be located during the course of a voluminous document review and production. Accordingly, to the extent this Court is inclined to find that ML waived its attorney-client privilege in this case—*which it should not do so*—such a finding should be limited to the documents that ML has been able to locate and listed on its privilege log in this matter.

### G.   The Magistrate Erred in Concluding that Michael Callaway Had the Ability to and Did Waive ML's Attorney-Client Privilege as to the Internal Review of ML's Ponte Vedra South Office.

As the Magistrate noted in his February 5, 2010 Order, Plaintiff's Request No. 13 sought documents generated during ML's review of the consulting services business conducted in its Ponte Vedra South Office. After setting forth Plaintiff's argument that Michael Callaway either inadvertently or impliedly "waived the attorney-client privilege when he spoke generally [to the Plaintiff regarding] [ ] the Corporate Audit group's *ad hoc* review," the Magistrate concluded

that ML must "produce the requested items," but did not specify whether Callaway inadvertently or impliedly waived the attorney-client privilege. (February 5, 2010 Order, p. 9 and 11).[19]  As discussed below, inadvertent waiver does not apply to these facts. To the extent implied waiver could apply, the Magistrate's decision was clearly erroneous in that he failed to consider the fundamental issues of whether Mr. Callaway was in a position or had the ability to waive ML's corporate privilege and whether Mr. Callaway could waive the privilege as to a set of documents that he had not reviewed and the content of which he had not been made privy.

### 1.    The Doctrine of Inadvertent Waiver is Inapplicable

As an initial matter, to the extent the Magistrate concluded that an inadvertent waiver had been committed, such a finding is in error. As is demonstrated in *U.S. Fidelity*, which is cited in the Magistrate's February 5, 2010 Order, inadvertent waiver—as the name makes evident— addresses unintentional acts and is therefore inapplicable to the present facts. *See U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Corp.* 630 F. Supp. 2d 1332 (M.D. Fla. 2007) (finding waiver where the defendant <u>mistakenly</u> produced documents which were included on defendant's privilege log);  *see also Kusch v. Ballard*, 645 So. 2d 1035, 1039 (Fla. 4th App. Dist. 1994) (Stevenson J., concurring in part, dissenting in part) (discussing the application of the inadvertent waiver doctrine in *Hamilton v. Hamilton Steel Corp*. and stating, "[I]t is quite apparent that *Hamilton* <u>does not address the specific issue of inadvertent disclosure</u> by counsel of attorney-client information because the disclosure by counsel in *Hamilton* <u>was clearly voluntary and intentional</u>.") (emphasis added). Moreover, the following *U.S. Fidelity* factors for considering inadvertent disclosure, which are quoted in footnote three of the Magistrate's February 5, 2010 Order, make evident that the doctrine addresses only unintentional acts:

---

[19] The Magistrate made no finding as to what documents Calloway actually reviewed prior to making his statements. Surely Calloway could not waive the privilege as to documents he never saw and did not rely upon in making his statements. Thus, it is unclear to ML what documents are even subject to the alleged waiver.

> (1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice.

*U.S. Fidelity*, 630 F. Supp. 2d at 1336 (citation omitted).

Factors such as precautions taken, the amount of time it took a producing party to recognize error, and the scope of production do not lend themselves to an analysis of an intentional act.

In contrast to the cases discussing inadvertent waiver and the factors for evaluating the same, Callaway <u>voluntarily</u> and <u>intentionally</u> disclosed his <u>opinion</u> of the *ad hoc* review to the Plaintiff Board. And, importantly, there has been no allegation that Callaway inadvertently provided a privileged document to Plaintiff or that ML inadvertently provided a privileged document to Mr. Callaway. As such, the doctrine is not applicable and any finding of waiver based on the same would have been clearly erroneous.

  2. <u>Implied waiver fails because Michael Callaway did not have the authority to waive the privilege and did not have access to the privileged documents or information</u>

In holding that Callaway's actions constituted implied waiver, the Magistrate hastily rejected ML's argument that Callaway is not the client and thus is not the holder of ML's attorney-client privilege because ML relied on *Tail of the Pup, Inc. v. Webb* ("*Webb*"), which addresses "intentional waiver, rather than implied waiver." (February 5, 2010 Order, p. 10) Although the Magistrate is correct that *Webb* addresses intentional waiver, ML's argument – that Callaway is not in a position to waive ML's attorney-client privilege – applies to implied waiver just the same as to intentional waiver. In fact, the same principle cited in *Webb* can be found in *Commodity Futures Trading Comm. v. Weintraub*, where the Court faced the "question of which corporate actors are empowered to waive the corporation's privilege." 471 U.S. 343, 348 (1985).

In *Weintraub*, which is directly on point, Justice Marshall held that "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Id.*

The Magistrate's failure to consider which corporate actors are empowered to waive the corporation's privilege is significant because Callaway did not hold the required power. Plaintiff incorrectly argues that Callaway is a Senior Vice President, and therefore, can waive the privilege. In reaching his decision that Mr. Callaway had waived ML's corporate privilege, the Magistrate referenced the same. (*See* February 5, 2010 Order, p. 10) The emphasis on Mr. Callaway's title ignores ML's arguments that Mr. Callaway lacked capacity to act for the firm and, instead, rests on a disingenuous argument regarding the significance of the title "senior vice president." As Plaintiff's counsel is well aware, Mr. Callaway was simply a Financial Advisor resident in a branch office in Ponte Vedra, Florida and his title of "Senior Vice President" was a recognition title rather than a corporate title given after an election by the board of directors. In fact, at ML like at many other large financial institutions, there are hundreds of people who hold the recognition title "Senior Vice President."[20] Like the hundreds of other employees holding the recognition title "Senior Vice President," Mr. Callaway was not in a position of "corporate management" and, according to the relevant case law, was not in a position to waive ML's corporate attorney client privilege.

Moreover, regardless of whether or not Callaway had the capacity to waive ML's privilege—which he did not—he was not in a position to waive the privilege because he was not privy to the privileged documents or information that resulted from the *ad hoc* review. To the

---

[20] Despite later referencing Mr. Callaway's title in the section of his Order holding that Mr. Callaway had waived ML's corporate privilege, during the hearing the Magistrate recognized that Mr. Callaway's title did not indicate that he was an officer of the company and was, instead, more akin to that of "a bank vice president." (*See* Transcript of Proceedings regarding Plaintiff's Motion to Compel, Nov. 16, 2009, at pp. 88-89).

contrary, he was the *subject* of the review. On this point, the Tenth Circuit case, *Natta v. Hogan*, is informative. In *Natta v. Hogan*, the court examines which employees "are in a position to speak for the company within the meaning of the word 'client.'" 392 F.2d 686, 692 (10th Cir. 1968). The *Natta* court holds that "the test is whether the person has the authority to control, or substantially participate in, a decision regarding action to be taken on the advice of a lawyer." *Id.* In the case at bar, Callaway would not fall into the definition of "client" because he was the *subject* of the *ad hoc* review, and thus, was not in a position to participate in a decision regarding the review.

The Magistrate erred by rejecting the relevant case law in *Webb* and thereby disregarding ML's primary argument as to implied waiver. The Magistrate further erred by failing to properly consider ML's argument that Mr. Callaway could not waive the attorney client privilege as to information with which he was never provided. Instead, the Magistrate concluded that Callaway had waived ML's privilege after finding only that (1) that the primary case relied upon by ML in regard to whether Mr. Callaway was in a position to waive the privilege applied to intentional rather than implied waiver and (2) "there was a clear financial benefit to the defendant from Callaway's disclosure of information, and he may have been motivated by a desire to prevent litigation." By failing to consider key legal arguments and by resting his decision on these wholly insufficient findings, the Magistrate committed clear error.

## **CONCLUSION**

For the foregoing reasons, ML respectfully requests that this Court vacate the Magistrate's findings with respect to waiver of attorney-client privilege.

Respectfully submitted this 22nd day of February, 2010.

/s/ Peter. S. Fruin_____
**Peter S. Fruin,** Fla. Bar No. 32897
Attorney for Defendant Merrill Lynch,
Pierce, Fenner & Smith Incorporated

**OF COUNSEL**
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203-2618
Telephone: (205) 254-1068
Facsimile:  (205) 254-1999
Email:    pfruin@maynardcooper.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 22nd day of February, 2010, the above and foregoing was electronically filed using the CM/ECF system, which will provide electronic notice of said filing to each party as follows:

David L. McGee
Beggs & Lane RLLP
P.O. Box 12950
Pensacola, FL  32502

Peter J. Mougey
Levin Papantonio Thomas
Mitchell Echsner & Proctor, P.A.
P.O. Box 12308
Pensacola, FL  32581

/s/ Peter S. Fruin_____ _____
OF COUNSEL