**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**PENSACOLA FIREFIGHTERS'
RELIEF AND PENSION FUND
BOARD OF DIRECTORS,**

      **Plaintiff,**

**v.**

                                     **Case No. 3:09cv53/MCR/MD**

**MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,**

      **Defendant.**

_____/

**O R D E R**

Pending before the court is the objection of Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") (doc. 140)[1] to the magistrate judge's order dated July 28, 2010 (doc. 136), following remand by this court for further findings with respect to one document production request in the motion to compel filed by Plaintiff Pensacola Firefighters' Relief and Pension Fund Board of Directors. Merrill Lynch objects on grounds that the magistrate judge failed to make factual findings as directed by this court. (*See* doc. 130.) Plaintiff filed a response (doc. 146). Having carefully reviewed the record, the magistrate judge's ruling, and the parties' arguments, the court hereby sets aside the magistrate judge's order as clearly erroneous and contrary to law.

_____

[1] Although titled "Merrill Lynch's Motion to Appeal to United States District Judge In Re: The Discovery Order of the Magistrate" (doc. 140), it is more appropriately labeled an objection. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

**Background**

Plaintiff is the pension plan administrator for the Pensacola Firefighters' Relief and Pension Fund Board of Directors. In February 2009, Plaintiff sued Merrill Lynch, its investment adviser, for violation of the Securities Exchange Act of 1934, alleging, among other things, that Michael Callaway, Merrill Lynch's Senior Vice President for pension fund consulting in the state of Florida, had breached Merrill Lynch's fiduciary duty to the plaintiff by failing to disclose certain conflicts of interest. Plaintiff asserts that the financial advice it obtained from Callaway and his team regarding which money managers to retain for the plan was influenced by Merrill Lynch's own financial interest and resulted in the selection of money managers who were good for Merrill Lynch but not good for the plan. (Doc. 1-2.) The parties have been involved in discovery disputes over several of the plaintiff's requests for production, and specifically, Request No. 13 remains at issue. Through Request No. 13, Plaintiff sought the production of documents, reports, memoranda, and notes generated by compliance review personnel and two lawyers who had reviewed Callaway's office procedures and practices, alleging Callaway had disclosed the content of these reports during a December 2005 presentation to the plaintiff's trustees. The December 2005 presentation occurred shortly after it had been publicized that Merrill Lynch was under investigation by the Securities Exchange Commission ("SEC") for advice it had given to pension funds. During his December 2005 presentation to the plaintiff's trustees, Callaway offered assurances that, although his office had been the subject of investigation, a compliance review team and two attorneys who investigated his office's practices and procedures had not offered him any suggestions; he said, they "have not been able to find one single suggestion that they could offer to how we might do it more appropriately." (Doc. 103-2, at 31.)

On the basis of this representation, the plaintiff served Merrill Lynch with its Request No. 13, seeking production of all documents related to the compliance team and attorneys' investigations. Merrill Lynch objected to Request No. 13 on grounds that it sought confidential documents protected by the attorney-client privilege or the attorney work-

product doctrine because it expressly requested attorney-generated reports.[2]  The plaintiff responded that Merrill Lynch had waived its attorney-client privilege by Callaway's representations at the December 2005 meeting.  The parties conferred and resolved some, but not all, of their discovery disputes.  The parties represented to the court in a status report that Merrill Lynch had agreed to produce nonprivileged notes or memoranda responsive to Request No. 13, but not material subject to the attorney-client privilege and that the parties disagreed over what constituted privileged material and whether Callaway had the authority to waive Merrill Lynch's corporate privilege.  (Docs. 60; 69-4.)  Merrill Lynch represented in a supplemental response to Request No. 13 that, as the subject of the investigation, Callaway was not privy to the reports generated by the review and would not have had authority to waive the company's attorney-client privilege regarding that investigation.

The magistrate judge held a hearing on November 16, 2009, and entered orders granting the motion to compel in part and denying it in part.  (Docs. 67, 88.)  As to Request No. 13, the magistrate judge granted the motion to compel, concluding that an implied waiver of privilege occurred through Callaway's December 2005 "disclosure of information," which provided "a clear financial benefit" to Merrill Lynch.  (Doc. 88, at 11.)  Merrill Lynch objected, and this court found that the magistrate judge's conclusion was not supported by fact findings sufficient to demonstrate waiver.  Thus, the court remanded the issue to the magistrate judge for specific fact findings regarding whether a disclosure of confidential information had been made, and if so, whether Callaway had the authority to waive the privilege on behalf of Merrill Lynch.  (Doc. 130.)  On remand, the magistrate judge considered the existing record and entered an order finding (1) that "the attorney-generated reports referenced by Callaway at the December 2005 meeting are subject to the protection of the attorney-client privilege;" and (2) that "Callaway was the subject of the investigation and may not have been privy to the [*sic*] all of the details of the investigation,

---

[2]  Merrill Lynch also objected on grounds that the request was overly broad, unduly burdensome, sought irrelevant documents, was vague and ambiguous, and did not provide a specific date for the alleged communication.

yet he used the conclusions reached for his own, and by extension Merrill Lynch's, benefit." (Doc. 136, at 4-5.)   Also, relying on plaintiff's counsel's representations during oral argument on the motion to compel, the magistrate judge noted that SEC documents described Callaway as being in charge of the state of Florida, "thus, he clearly exercised some managerial or supervisory duties."   (Doc. 136, at 8.)   The magistrate judge concluded, "under the specific circumstances of this case, Callaway made a disclosure of confidences when he addressed the Pension Board, and he had the authority to waive the attorney client privilege."   (Doc. 136, at 8.)   Thus, the magistrate judge compelled production on Request No. 13.

Merrill Lynch objects to the magistrate judge's order on grounds that the magistrate judge failed to make necessary fact findings and improperly made findings without holding an evidentiary hearing.  The plaintiff responds that the record is adequate to support the magistrate judge's findings.

**Discussion**

Standard of Review

The Federal Rules of Civil Procedure provide that when timely objections are made to a magistrate judge's order on a nondispositive matter, the district judge in the case must consider the objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) (authorizing a judge to "reconsider any pretrial matter" referred to a magistrate judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law").   "The 'clearly erroneous or contrary to law' standard of review is extremely deferential."  *Tolz v. Geico Gen. Ins. Co.*, No. 08-80663, 2010 WL 384745, at *2 (S.D. Fla. 2010); *see also Edelen v. Campbell Soup Co.*, 265 F.R.D. 676, 680 (N.D. Ga. 2010). However, a finding of fact is "clearly erroneous if the record lacks substantial evidence to support it."  *Lincoln v. Bd. of Regents of Univ. Sys. of Georgia*, 697 F.2d 928, 939 (11th Cir.), *cert. denied*, 464 U.S. 826 (1983). Also, "[a] finding is clearly erroneous when the reviewing court, after assessing the evidence in its entirety, is left with a definite and firm conviction that a mistake has been committed."  *Krys v. Lufthansa German Airlines*, 119

F.3d 1515, 1523 (11th Cir. 1997) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)), *cert. denied*, 522 U.S. 1111 (1998).  A decision "is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Tolz*, 2010 WL 384745, at \*2; *see also Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (S.D.N.Y. 2000) (stating the clearly erroneous or contrary to law standard of review is appropriate when reviewing privilege determinations of a magistrate judge).

Waiver of Attorney Client Privilege

"Questions of privilege that arise in the course of the adjudication of federal rights are governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."  *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting Fed. R. Evid. 501).  The attorney-client privilege "is one of the oldest of the privileges for confidential communications."  *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 606 (2009) (internal marks omitted); *see also Cox v. Admin. U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir. 1994), *modified on other grounds on reh'g*, 30 F.3d 1347 (11th Cir.), and *cert. denied* 513 U.S. 110 (1995).  It is well established that the attorney-client privilege, which serves the purpose of promoting full and frank communications between attorneys and clients, extends to corporations as well as individuals.  *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 348 (1985). The Eleventh Circuit recognizes that the attorney-client privilege, despite its value, is "an obstacle to the investigation of truth;" therefore, it is not without exceptions, *Cox*, 17 F.3d at 1414 (internal marks omitted), and "should be construed as narrowly as consistent with its purpose," *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir.), *cert. denied*, 484 U.S. 987 (1987).

The privilege protects only confidential communications.  *Upjohn Co.*, 449 U.S. at 395-96.  To invoke the privilege, the party claiming it must establish the following:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers

(c) for the purpose of securing primarily either (i) an opinion on law (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Fed. Grand Jury Proceedings, 89-10(MIA)*, 938 F.2d 1578, 1581 (11th Cir. 1991); *see also United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990).  The party invoking the privilege bears the burden of demonstrating that the particular communications at issue are privileged and that the privilege was not waived.  *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003), *cert. denied*, 541 U.S. 982 (2004); *see also In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) (stating the party who invokes the privilege must demonstrate "that it applies to the communications at issue and that it has not been waived").

When a communication is no longer kept confidential, there is no justification for retaining the privilege; that is, once waived, it cannot be reasserted.  *Suarez*, 820 F.2d at 1160.  The privilege is waived as to matters actually revealed and may be waived implicitly when a selective but "significant portion" of a confidential communication is disclosed.  *See Nguyen v. Excel Corp.*, 197 F.3d 200, 207-08 (5th Cir. 1999) (holding the privilege was waived by corporate executives testifying about portions of an attorney-client communication).  The implied waiver doctrine "reflects the position that the attorney-client privilege was intended as a shield, not a sword," and for this reason, selective disclosures for tactical or self-serving purposes operate to waive the privilege.  *Cox*, 17 F.3d at 1417 (internal marks omitted).  Courts use caution when finding an implied waiver, however, and such claims are to be "evaluated in light of principles of logic and fairness."  *In re Keeper of Records*, 348 F.3d at 23-24 (noting, "case law reveals few genuine instances of implied waiver").

On remand for further findings, the magistrate judge stated that "[t]here is no dispute that the attorney-generated reports referenced by Callaway at the December 2005 meeting are subject to the protection of the attorney-client privilege."  (Doc. 136, at 4.)  Thus, the issue now on review is whether the record and law support the magistrate judge's finding

of implied waiver by the defendant corporation. A review of the record shows that Callaway did not explicitly reference attorney-generated reports or conclusions but revealed only his impressions of the conclusions reached by the attorneys and the compliance team investigation; thus, as more fully set forth below, the magistrate judge's finding of implied waiver is contrary to law and clear error.

The magistrate judge found that the transcript of Callaway's presentation reveals a disclosure of a "significant portion" of the attorneys' post-investigative conclusions, justifying a waiver of privilege as to the whole.[3] The portion of the transcript where Callaway referenced the attorney investigation reads as follows:

> To give you all comfort, let me just share with you that when the first article of any of this first appeared almost two years ago in the newspaper, Merrill Lynch sent down to our office in Jacksonville a team of four compliance people. We have many of them. They sent four, that have come and spent two days going through every single thing that we do. Their intention when they do it is to make certain that we are always doing the right thing and that there is no exposure and that we don't know about or that something that maybe someone had just inadvertently omitted.
>
> The net result out of all that they offered us, no suggestion as to how we might do anything more appropriate. They were completely happy. And frankly, for any of you that are familiar with compliance departments, that's not even a frequent event. Usually they find something, but in this case they were perfectly happy with everything that they found.
>
> When the SEC showed up, Merrill Lynch had an outside law firm that represents them almost on an ongoing basis in SEC-related and any regulatory-related issues. These guys sent in two lawyers and they spent two days in my office and they go through every single thing that we have. They look at process, procedure, billing, everything that we do, and they have not been able to find one single suggestion that they could offer to how we might do it more appropriately. So as a firm and as an office, we feel perfectly comfortable that when the SEC finishes looking at what they are doing, what they are looking at, they will be as comfortable as we are.

---

[3] While Merrill Lynch asserts that this transcript of Callaway's presentation was not presented as evidence, it made no objection to it being read and relied upon at the oral argument. Therefore, the portion read into the transcript is properly considered part of the record.

(Doc. 103-2, at 30-32; Ex. A at 80-82.) This record does not support a finding that Callaway's statements disclosed any privileged information, much less a "significant portion" of the attorneys' post-investigative conclusions, as the magistrate judge found. The mere fact that Callaway's office was investigated is not privileged. *See Upjohn*, 449 U.S. at 395 (stating "the privilege extends only to *communications* and not to facts" (internal marks omitted)). Callaway's comments only indirectly referenced the outcome of the attorneys' investigation by stating that he was offered no suggestions for changing his practices. He did not reference the contents of a specific opinion or final report or any specific communication with, or conclusion of, the attorneys.[4] Disclosing the conclusion of a confidential opinion or report – i.e., "the heart of the communication" – would be significant and would destroy confidentiality. *See Am. Family Life Assur. Co. of Columbus v. Intervoice, Inc.*, No. 4:08cv167, 2010 WL 3000238, at *3 (M.D. Ga. 2010).[5] However, Callaway's statements disclosed only his *belief* that the attorneys were happy, apparently based on what he was *not* told; the attorneys gave him no suggestions for change. Absent an indication that Callaway had personal knowledge of the actual contents of a particular privileged document or confidential communication, his "disclosure" was not the type of "purposeful, substantive disclosure[]" that is necessary to waive the attorney-client privilege. *See Preferred Care Partners v. Humana, Inc.*, 258 F.R.D. 684, 695 (S.D. Fla.

---

[4] Also, the portion of the excerpt referencing the "compliance team" does not state whether the team included any attorneys. It is unclear whether the team included the two attorneys referenced in the next paragraph or whether the attorneys' review was separate. In any event, Merrill Lynch has agreed to produce notes and reports that are responsive to Request No. 13 and not subject to the attorney-client privilege.

[5] In *Am. Family Life Assur. Co. of Columbus v. Intervoice, Inc.*, the district court found that the defendant had waived its corporate privilege to attorney-generated documents by disclosing a significant portion, that is, the conclusions reached in the documents (i.e., Intervoice disclosed to the SEC and to one of its customers that outside counsel had concluded certain products did not infringe on certain patents held by another company). No. 4:08cv167, 2010 WL 3000238, at *3 (M.D. Ga. 2010). The court stated, "Intervoice waived the attorney client privilege as to the opinions because it disclosed the conclusion of the opinions to third parties, the SEC and Cal-Fed," and the court found "no indication that Intervoice did not intend to disclose the conclusion of the opinions to a government agency, the SEC." *Id.* at *4. Here, by contrast, Callaway disclosed his personal perception of the attorneys' conclusions based on the fact that he was not told to change anything. Also, contrary to *Am. Family*, where there was no dispute that the company had purposefully made the disclosure, and as explained later in this order, there is no indication here that Callaway knew of the opinions and had authority to speak on behalf of Merrill Lynch on this issue.

2009).  The magistrate judge's conclusion to the contrary is not supported by the record and is contrary to law.[6]

Furthermore, the magistrate judge's concerns over fairness are misplaced.  Fairness depends in each case on the specific context in which the privilege is asserted.  *In re Grand Jury Proceedings*, 219 F.3d 175, 182-83 (2d Cir. 2000).  While "the doctrine of waiver by implication reflects the position that the attorney-client privilege was intended as a shield, not a sword," and "a defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes," *Cox*, 17 F.3d at 1417 (internal marks omitted), the record does not support a finding that this has occurred.  Callaway's comments were made at a presentation long before any litigation ensued, not during the course of this judicial proceeding.[7]  *See In re Keeper of Records*, 348 F.3d at 24 ( "Virtually every reported instance of an implied waiver extending to an entire subject matter involves a judicial disclosure, that is, a disclosure made in the course of a judicial proceeding.").  Callaway's self-serving comments during a presentation years before this litigation began simply cannot fairly be characterized as an attempt by Merrill Lynch to gain an unfair litigation advantage here, nor can Merrill Lynch's assertion of the privilege during this litigation fairly be characterized as an unfair attempt to put the

---

[6]  The magistrate judge distinguished Callaway's comments from the statements considered to be too general to amount to a disclosure in the *Preferred Care Partners* case.  There, the company's Chief Financial Officer had referenced a legal opinion in his deposition testimony, stating the company was told it could go forward with a plan to raise rates without violating the terms of a confidentiality agreement.  However, the officer "could not recall any of the details surrounding this legal opinion." *Preferred Care Partners*, 258 F.R.D. at 694.  The court concluded that the officer's deposition testimony amounted to "general, non-committal statements regarding the nature of that communication" and not "purposeful, substantive disclosures" that would waive the attorney-client privilege as to the entire content of the email communication thought to be the source of the legal opinion.  *Id.* at 695.  This court, however, sees no distinction between Callaway's comments that he was not given suggestions for what he could do differently and the statement in *Preferred Care Partners* that the company was told it could go forward with a certain plan.  Callaway's statements, based on his impressions, appear to be even more general than those found to be non-substantive in *Preferred Care Partners*.  In neither instance were details revealed of a specific substantive legal opinion nor were any factors such as where or when the legal opinion was rendered, who rendered it, or how the speaker learned of it revealed.

[7]  Additionally, Merrill Lynch has not placed the reports in issue during this litigation by asserting as a defense that it relied on legal advice to the effect that Callaway's conduct was legal.  *Cf. In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 24 (1st Cir. 2003) (noting that advancing an advice-of-counsel defense would waive the privilege).

horse back in the barn, so to speak, where Callaway's comments did not substantively disclose any confidences.[8]  *Cf. U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Corp.*, 630 F. Supp. 2d 1332, 1336 n.1 (M.D. Fla. 2007) (noting "black letter law that once the privilege is waived, and the horse is out of the barn, it cannot be reinvoked" (internal marks omitted)).

The magistrate judge acknowledged that Callaway "was the subject of the investigation and may not have been privy to . . . all of the details of the investigation," but nonetheless found that Callaway used the conclusions for his own, and Merrill Lynch's, benefit.  (Doc. 136, at 5.)  The self-serving nature of Callaway's statements alone, however, is an insufficient ground on which to find that Callaway actually knew the conclusions reached by the attorneys' review of his office practices.  As already stated, the transcript of the presentation shows that Callaway did not affirmatively represent he had reviewed or relied on any attorney-generated *report*, and the record lacks any indication that Callaway actually was privy to any attorney report that may have been generated out of the investigation into his office.  The magistrate judge's statement that, as the subject of the investigation, Callaway "may not have been privy to" the details seems to acknowledge this.

Additionally, the magistrate judge found by implication from Callaway's title that he was a privilege holder with the capacity to waive the privilege on the part of Merrill Lynch stating, when "an individual bearing the title of Senior Vice President of the company" makes a self-serving statement which also benefits the company, it can be assumed he had the authority to waive the attorney-client privilege.  (Doc. 138, at 8.)  A corporation must speak and act through agents, that is, "individuals empowered to act on behalf of the corporation."  *Weintraub*, 471 U.S. at 348.  "[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors."  *Id.*  However, the waiver inquiry depends heavily on the factual context in which the privilege was allegedly waived.  Mere title alone may be an indicia of

---

[8]  In other words, there was no waiver.

an agent's capacity to waive the corporation's attorney-client privilege – there are no hard and fast rules – but the implied waiver inquiry depends on fairness in light of the context as a whole.  *See In re Grand Jury Proceedings*, 219 F.3d at 185-88 (stating it "is not prudent to formulate a per se rule in this area of the law" and remanding for further findings on the conclusion that the grand jury testimony of the corporation's chief executive officer referring to advice of counsel did not necessarily waive the company's attorney-client privilege).

Here, the context as a whole reflects little, if any, of Callaway's actual authority within the company.  Nothing suggests he was a chief executive officer, director, or the corporation's legal representative.  The magistrate judge's finding that Callaway was "in charge of the entire State of Florida" relied on attorney argument, not evidence, as Plaintiff's attorney represented to the magistrate judge that an SEC document, not in the record, described Callaway as being in charge of the state of Florida.  (Doc. 136, at 8.)  However, in connection with its motion for review, Merrill Lynch presented the SEC document cited by the plaintiff's attorney at oral argument, which indicates that Callaway was a "Senior Vice President and Financial Advisor" at Merrill Lynch's Ponte Verde, Florida office, leading a team of approximately ten employees.  (Doc. 141-1.)  Attorney argument and Callaway's mere job title in a large company do not demonstrate that Callaway was a corporate privilege holder with access to the privileged information Plaintiff seeks or had the authority to disclose such privileged information.  Callaway's title alone provides little insight into his knowledge of the outcome of the investigation, which notably targeted his own office and procedures.  *See generally*, *Merrill Lynch, Pierce, Fenner & Smith v. Livingston*, 566 F.2d 1119, 1222-23 (9th Cir. 1978) (applying a fact-intensive inquiry to determine whether a person with the title "Vice President" holds executive duties and "the opportunities for confidential information that the title implies," in the context of insider trading).

Neither does the self-serving nature of Callaway's statements support a finding of implied waiver on behalf of the corporation.  "[T]he issue is not whether the reference to the attorneys' advice was a deliberate attempt at exculpation, but rather whether it was a

deliberate attempt *on the part of the corporation* to exculpate itself, as opposed to [the individual's] effort to exculpate himself personally." *In re Grand Jury Proceedings*, 219 F.3d at 188. Merrill Lynch had no means of controlling Callaway's statements at the presentation, much as the company in *In re Grand Jury Proceedings* had no means of controlling its CEO's grand jury testimony. *See id.* (recognizing that even when an agent's statement was self interested, "it does not follow that the corporation itself should be penalized"). The court is left with the impression from the circumstances of Callaway's "disclosure" that his statements were more of an effort to exculpate himself personally before his clients than an effort by the *company* to disclose selective confidential statements that would benefit the company in litigation. Although deference is due when reviewing a magistrate judge's nondispositive rulings, *see Tolz*, 2010 WL 384745, at *2, a finding of fact that is not supported by the record amounts to clear error, s*ee Lincoln*, 697 F.2d at 939. Also, clear error exists where, as here, the court is "left with a definite and firm conviction that a mistake has been committed." *Krys*, 119 F.3d at 1523.

Even characterizing Callaway's statements, referring to the conclusions reached from the investigation of his office, as disclosures of confidences, courts have recognized that "a more limited form of implied waiver may be appropriate where disclosure occurred in a context that did not greatly prejudice the other party in the litigation." *In re Grand Jury Proceedings*, 219 F.3d at 183 (citing *In re von Bulow*, 828 F.2d 94, 102-03 (2d Cir. 1987)). The Second Circuit has limited the scope of such a waiver "to only those communications already revealed to the public," where the disclosure was either extra-judicial or occurred early in the proceedings. *Id.* This result is appropriate here. Callaway's actual statements relaying his impressions of the outcome of the attorneys' investigation are not subject to the privilege, but those statements, made well before this litigation, do not justify an implied waiver of Merrill Lynch's privilege as to the whole of attorney-generated reports, memoranda or notes related to the investigation and from which Callaway *may* have formed his impressions. The magistrate judge's conclusion otherwise was clear error.

Accordingly, it is hereby ORDERED that Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc.'s objection ("Motion to Appeal to the United States District Judge") (doc. 140)

is SUSTAINED, and the magistrate judge's order (doc. 136) finding an implied waiver of attorney-client privilege with regard to Request No. 13, is set aside.  *See* Fed. R. Civ. P. 72(a) (directing the district judge to "modify or set aside" any part of a magistrate judge's order that is clearly erroneous or contrary to law).

      **DONE AND ORDERED** on this 10th day of November, 2010.


*s/ M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**